FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 SEP 12  AM 9:42

CASE NO.: 6:18-CV-1495-ORL-31-DCI

HEATHER MELLICHAMP and JOHN
MORGAN, individually and on behalf of all
others similarly situated,

    Plaintiff,

v.

GET TOGETHER, INC.,
a Delaware Corporation

    Defendant.

_____/

CLASS ACTION

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND DEMAND FOR JURY TRIAL

Plaintiffs Heather Mellichamp and John Morgan, on behalf of themselves and all others similarly situated, allege the following:

### INTRODUCTION

1. Plaintiffs Heather Mellichamp and John Morgan, individually and on behalf of all others similarly situated, bring this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Get Together, Inc. (hereinafter "Defendant") in negligently and/or intentionally or willfully contacting Plaintiff on Plaintiff's cellular telephone(s) in direct contravention and violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter "TCPA"), thereby invading Plaintiffs' privacy.

1

2. The TCPA prohibits, among other practices, 1) sending unsolicited text messages (or
   "SMS" messages) to cellular telephones without prior express consent within the
   meaning of the TCPA, 2) sending text messages to phone numbers registered on the
   National Do-Not-Call List in contravention of 47 C.F.R. § 64.1200(c)(2) and 3) sending
   text messages without an internal do-not-call procedure conforming to the minimum
   requirements as set by 47 C.F.R. § 64.1200(d). Plaintiffs allege as follows upon personal
   knowledge as to themselves and their own acts and experiences, and, as to all other
   matters, upon information and belief, including investigation conducted by their
   attorneys.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331. This case involves a question of
   Federal law, 47 U.S.C. § 227, et seq. (TCPA). Damages and injunctive relief are available
   under 47 U.S.C. § 227(b)(3).

4. Venue is proper in this District because Defendant engages in business in this district
   and a substantial part of the events or omissions giving rise to this claim occurred here.

## PARTIES

5. Plaintiff Mellichamp is a natural person who, at all times relevant herein, is and was a
   resident of and domiciled in Orange County, Florida and is a Florida citizen. Plaintiff
   Mellichamp is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. §
   153(39).

6. Plaintiff Morgan is a natural person who, at all times relevant herein, is and was a
   resident of and domiciled in Orange County, Florida and is a Florida citizen. Plaintiff

Morgan is, and all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

7. Upon information and belief, Plaintiffs allege that Defendant is a corporation incorporated in Delaware with a principal place of business in California. Defendant's registered agent for service of process is Abraham Shafi, 301 Bryant St. # 201, San Francisco, CA, 94107. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

8. Upon information and belief, Plaintiffs allege Defendant provides technology and communication services to hundreds of thousands of consumers in the form of a mobile app called IRL App, and all times relevant herein Defendant conducted business in Florida and in Orange County, including the conduct that gives rise to this complaint.

## THE TELEPHONE CONSUMER PROTECTION ACT

9. Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. Consistent with its purpose, the TCPA regulates, among other things, the use of prerecorded messages and use of text or "SMS" messaging. The TCPA was designed to prevent calls like the ones described within this complaint and to protect of the privacy of citizens. "Voluminous consumer complaints about abuses of telephone technology…prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11. By enacting the TCPA, Congress made particular and specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243. § 7

12. To effectuate such findings, Congress found that, except in "emergency situations" or where the receiving party consents to such calls, "[b]anning…automated or prerecorded telephone calls…is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC,* 2012 WL 3292838 at* 4 (N.D. Ill. Aug. 10, 2012)(citing Congressional findings on TCPA's purpose); *Lardner v. Diversified Consultants Inc.,* 17 F.Supp.3d 1215 (S.D. Fla. 2014)(Same).

13. Specifically, Congress found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." *Id.* At §§ 12-13. *See also, Mims, 132 S. Ct. at 744.*

14. Relevant to the present case, the FCC issued a declaratory opinion in June 2015 confirming, among other things, that 1) simply being on an acquaintance's contacts list does not amount to consent to robocalls from third-party applications downloaded by the acquaintance; 2) internet-to-phone text messages require consumer consent; and 3) text messages are "calls" subject to the TCPA, reaffirming a previous declaratory opinion. Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Red 7961(2015).

15. Despite the prohibitions in the TCPA, automated and telemarketing calls thrived, prompting the U.S. Federal Trade Commission (FTC) to open the National Do Not Call Registry in order to comply with the Do-Not-Call Implementation Act of 2003 15 U.S.C. § 6101 et. seq.) ("DNC"). The DNC was signed into law by President George W. Bush on March 11, 2003.  The DNC established the FTC's National Do Not Call Registry ("DNC List" or "Do Not Call List") to facilitate compliance with the TCPA. On June 26, the FCC revised the TCPA rules and adopted new rules to provide consumers with several options for avoiding unwanted telephone solicitations including the DNC List. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 2003 FCC LEXIS 3673, *1, 18 FCC Rcd 14014, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003). Registration for the Do-Not-Call list began on June 27, 2003, and enforcement started on October 1, 2003.

16. "Since 2009, the FTC has seen a significant increase in the number of illegal sales calls….. Internet powered phone systems make it cheap and easy for scammers to make illegal calls from anywhere in the world, and to display fake caller ID information, which helps them hide from law enforcement."[1]

17. In addition to being required to check numbers against the *national* DNC list, companies are required to maintain *internal* do not call lists. The FCC rules allow consumers to make "do-not-call" requests that companies must track in internal do-not-call lists. 47 C.F.R. § 64.1200(c); 16 C.F.R. § 310.4(b)(1)(iii)(B). Telemarketers must provide consumers with an automated opt-out mechanism that "must automatically record the called person's

---

[1] https://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry (Last Checked March 27, 2018).

number to the seller's do-not-call list and immediately terminate the call." 47 C.F.R.
64.1200(b)(3). This mechanism was enacted to empower consumers to "stop receipt of
unwanted autodialed or prerecorded telemarketing calls to which they never consented."
Telephone Consumer Protection Act of 1991, Final Rule, 77 Fed. Reg. 34233, 34239
(June 11, 2012).

18. 47 U.S.C. § 227(b) proscribes telemarketing activities utilizing automated equipment. 47
U.S.C. § 227(c) proscribes telemarketing activities related to privacy rights not limited to
the use of automated equipment.

19. 47 U.S.C. § 227(c) instructed the Commission to create and implement rules and
regulations effectuating congressional purposes. Those rules and regulations are found at
47 C.F.R. § 64.1200.

20. The T.C.P.A. creates a private right of action for violations of Section 227(b):

> (3) PRIVATE RIGHT OF ACTION.—A person or entity may, if
> otherwise permitted by the laws or rules of court of a State,
> bring in an appropriate court of that State—
> (A) an action based on a violation of this subsection or the
> regulations prescribed under this subsection to enjoin such
> violation,
> (B) an action to recover for actual monetary loss from such a
> violation, or to receive $500 in damages for each such
> violation, whichever is greater, or
> (C) both such actions.
> If the court finds that the defendant willfully or knowingly
> violated this subsection or the regulations prescribed under
> this subsection, the court may, in its discretion, increase the
> amount of the award to an amount equal to not more than 3
> times the amount available under subparagraph (B) of this
> paragraph.

As well as Section 227(c):

(5) PRIVATE RIGHT OF ACTION.—A person who has received
more than one telephone call within any 12-month period by
or on behalf of the same entity in violation of the regulations
prescribed under this subsection may, if otherwise permitted
by the laws or rules of court of a State bring in an appropriate
court of that State—.
(A) an action based on a violation of the regulations
prescribed under this subsection to enjoin such violation,
(B) an action to recover for actual monetary loss from such a
violation, or to receive up to $500 in damages for each such
violation, whichever is greater, or
(C) both such actions.

## **FACTUAL ALLEGATIONS**

21. Plaintiffs fully incorporate by reference the preceding paragraphs.

22. Get Together, Inc. offers its users a mobile application ("mobile app" or "app") entitled
    IRL App (sometimes "IRL"); IRL is shorthand for "in real life." The app is ostensibly
    designed to allow users to interact via the app, to plan events and get-togethers.

23. Get Together, Inc. is a new business name – previously, Get Together, Inc. was named
    Gatherapp, Inc.

24. Gatherapp, Inc. created, advertised and implemented known as Gather, which
    functioned in essentially the same way as IRL.

25. Gather was eventually banned by Apple and other app stores for their abusive spam
    telemarketing techniques and privacy invasions.

26. Rather than acknowledge and correct its abusive and illegal telemarketing techniques,
    Gatherapp, Inc. simply rebranded as Get Together, Inc. and created an app doing the
    same things, but simply called something different.

27. Defendant's business model is to harvest the contacts – names and phone numbers – of
    their users, then to spam the contacts with unsolicited text messages.

28. Defendant also spams consumers based on whether they allegedly were "nominated" for an event on Defendant's app.

29. Defendant also simply mines and trolls for names along with phone numbers to send spam and unsolicited text messages to consumers.

30. Defendant aggressively pushes users to provide Defendant access to its contacts list for purposes of spamming the contacts with unsolicited text messages.

31. Defendant's spam text messages are designed to solicit consumers to download their mobile app. At that point, of course, Defendant would then harvest new contact information and spam *those* phone numbers with unsolicited text messages, again for the purposes of soliciting app downloads, new contact information, and so on and so forth.

32. Defendant's business model is entirely predicated on its spam and abusive telemarketing techniques.

33. At no time did Plaintiffs provide their cellular telephone numbers to Defendant through any medium.

34. Since July 2018, Plaintiff Mellichamp received at least two (2) unsolicited text messages from Defendant, all of which indicated Plaintiff had been "nominated" and soliciting Plaintiff to download Defendant's IRL app.

35. Since July 2018, Plaintiff Morgan received at least two (2) unsolicited text messages from Defendant, all of which indicated Plaintiff had been "nominated" and soliciting Plaintiff to download Defendant's IRL app.

36. Such "nomination," of course, is a red herring – Defendant uses language designed to deceive consumers, including Plaintiffs, into thinking that friends or contacts are

interacting with them, when in reality Defendant is simply using such language to push consumers, including Plaintiffs, into downloading the IRL app so that Defendant can harvest additional contacts to spam.

37. The texts, described above, was unsolicited and unexpected by Plaintiffs. Plaintiffs, prior to the receipt of the spam text message, had not provided their cellular telephone number to Defendant.

38. Through this conduct, Defendant contacted Plaintiffs on Plaintiffs' cellular telephone regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

39. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

40. The telephone numbers Defendant called were assigned to a cellular telephone service pursuant to 47 U.S.C. § 227(b)(1).

41. The telephone numbers Defendant called were assigned to numbers for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

42. The unsolicited text message constitutes a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i), and for which they did not receive consent, pursuant to 47 U.S.C. § 227(b)(1)(A).

43. The text message sent by Defendant, or its agent, described above violated 47 U.S.C. § 227(b)(1).

44. Alternatively, Defendant enlisted a third-party telemarketing company to act as its agent in sending the unsolicited text messages.

45. Defendant and/or its agent sent or is responsible for sending the text messages at issue in this Complaint, including the (at minimum) two text messages sent to both Plaintiffs, all of which violated the TCPA.

46. The text messages were "advertisement[s]" in that the messages were material advertising the commercial availability or quality of Defendant's property, goods or services – namely, Defendant's IRL app. 47 C.F.R. § 64.1200(f)(1).

47. Defendant is a seller because it is a person or entity on whose behalf telephone messages were initiated to encourage the download of Defendant's IRL app. 47 C.F.R. § 64.1200(f)(9).

48. Defendant is a telemarketer because it is a person or entity that initiated the telephone messages to encourage the download of Defendant's IRL app. 47 C.F.R. § 64.1200(f)(11).

49. Defendant failed to meet the meet the minimum standards of 47 C.F.R. § 64.1200(d) by lacking:

> (1) A written policy for maintaining a do-not-call list.
>
> (2) Training of personnel in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests.
>
> (4) Identification of sellers and telemarketers.
>
> (5) Maintenance of do-not-call lists.

50. The rules set forth in 47 C.F.R. § 64.1200(d) are applicable to Defendant because the text messages were telephone solicitations to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153,

"Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. § 64.1200(e).

51. Defendant sent Plaintiffs the text messages notwithstanding the fact that Plaintiffs never provided their cellular telephone number to Defendant or given any consent to receive phone calls or text messages from Defendant.

52. Through this conduct, Defendant contacted Plaintiffs on Plaintiffs' cellular telephone, thereby invading their privacy, with unsolicited telemarketing text messages prohibited by 47 U.S.C. § 227(c)(1)(A) and 47 C.F.R. § 64.1200(c).

53. Plaintiff Morgan's cellular telephone number was registered on the National Do-Not-Call registry more than 30 days prior to receiving any text message from Defendant.

54. All texts sent by Defendant and/or its agent to Plaintiff Morgan violated 47 C.F.R. § 64.1200(c)(2) and 47 U.S.C. § 227(c).

## CLASS ACTION ALLEGATIONS

55. Plaintiffs fully incorporate by reference paragraphs 1-20, 22-54.

56. Plaintiffs bring this action on behalf of themselves individually and all others similarly situated.

57. Defendant sends unsolicited text messages without express, prior consent and not pursuant to an ongoing emergency.

58. Plaintiffs both individually represent and are members of the following Class ("ATDS class"), consisting of:

> "All persons within the United States who received one or more text messages from Defendant pursuant to a scheme substantially similar or identical to the text messaging scheme

> described in this Complaint via an ATDS between September 11, 2014, and the certification of this class."

59. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not currently know the number of members in the Class, but, upon information and belief, as well as the investigation of their attorneys, believe the number to be in the thousands or tens of thousands, and perhaps more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

60. Plaintiff Morgan represents and is a member of the following class ("Do-Not-Call" Class) consisting of:

> "All persons within the United States whose numbers were registered on the Do-Not-Call registry more than 30 days prior to receiving two or more text messages from Defendant pursuant to a scheme substantially similar or identical to the text messaging scheme described in this Complaint between September 11, 2014, and the certification of this class."

61. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not currently know the number of members in the Class, but, upon information and belief, as well as the investigation of their attorneys, believe the number to be in the thousands or tens of thousands, and perhaps more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

62. Additionally, both Plaintiffs represent and are members of the following class ("Subscriber Rights Class") consisting of:

> "All persons within the United States who received more than one text message from Defendant pursuant to a scheme substantially similar or identical to the text messaging scheme described in this Complaint between September 11, 2014, and the certification of this class."

63. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not currently know the number of members in the Class, but, upon information and belief, as well as the investigation of their attorneys, believe the number to be in the thousands or tens of thousands, and perhaps more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

64. The text messages were sent pursuant to a common telemarketing scheme for which Defendant did not obtain the necessary consent required by the TCPA and its delivery restrictions in 47 C.F.R. § 64.1200(a).

65. Whether or not the unsolicited text messages were sent via ATDS, the unsolicited text messages were sent pursuant to a common telemarketing scheme during which Defendant did not comply with and thus violated the telemarketing and do-not-call list restrictions of the TCPA and its telephone solicitation restrictions in 47 C.F.R. § 64.1200(c)-(e).

66. The telephone numbers Defendant called were assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1).

67. Each unsolicited text message was a call that was not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i) and 47 C.F.R. § 64.1200 and for which Defendants did not receive prior consent, as required by 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200.

68. The unsolicited text messages were a telephone call that "includes or introduces an advertisement or constitutes telemarketing" pursuant to 47 C.F.R. § 64.1200(a)(2).

69. Plaintiffs and the members of the Class were harmed by actions of Defendant in at least, but not limited to, the following ways: Defendant, either directly or through its agents,

illegally contacted the Plaintiffs and the Class members via their cellular telephones by using an unsolicited spam text message(s), thereby invading the privacy of Plaintiffs and the Class members, trespassing on chattel, draining battery and causing other harms recognized by TCPA regulations and courts interpreting such regulations. Plaintiffs and the Class members were thereby damaged.

70. This suit, on behalf of the Class, seeks damages and injunctive relief for recovery of economic injury only. This suit is not intended to procure recovery for personal injury and/or related claims. Plaintiff reserves the right to modify or expand the Class definition to seek recovery on behalf of additional persons as warranted through further investigation and discovery.

71. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits to both parties and to this Court. The Class can be specifically identified through Defendant's records, or through the records of Defendant's agent(s).

72. The commonality in questions of law and fact and the intersecting community of interests protected by the TCPA therein have been repeatedly established. The common questions of law and fact to the Class predominate over questions which may affect individual Class members, including, but not limited to, the following:

    a.    Whether, within the four years prior to the filing of the Complaint, Defendant or its agents sent any unsolicited text message(s) to the Class (other than, as previously mentioned, any message made for emergency purposes or with the prior express consent of the called party, or any other statutory exception) using

any automatic dialing and/or SMS texting system to any telephone number assigned to a cellular phone service;

b.  Whether Defendants made calls to Class members on the Do Not Call Registry;

c.  Whether Defendants maintained Do Not Call lists, policies, and/or training;

d.  Whether consumers suffer injury where they receive unsolicited text messages from entities lacking required internal telemarketing procedures;

e.  Whether Plaintiff and the Class members were damaged, and the extent of damages for such violation, and;

f.  Whether Defendant and its agents should be enjoined from engaging in such conduct in the future;

g.  Whether Plaintiff and the Class are entitled to any other relief.

73. As individuals who received at least one – and, as it pertains to subscriber rights violations, more than one – unsolicited spam text message from Defendant without prior express consent, Plaintiffs are asserting claims that are typical of both Classes. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has no interests antagonistic to any other member of the Class.

74. Plaintiff and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for further harm. Additionally, these violations of law will be allowed to proceed without remedy and Defendant will thus likely continue such and substantially similar illegal conduct, including pertaining specifically to Plaintiff and class.

Because of the nature of individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

75. Plaintiff has retained counsel experienced in handling class action claims, as well as claims involving violations of the TCPA.

76. A class action is the best method for the fair, efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and state law. The interest of Class members to individually control the prosecution of separate claims against Defendant is small due to the minimal nature of the maximum statutory damages in an separate or individual action alleging invasion of privacy through violation of the TCPA.

77. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

78. Defendant has acted on grounds generally applicable to the Class, thus making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## COUNT I: VIOLATIONS OF THE TCPA 47 U.S.C. § 227 ET SEQ.
### (on behalf of both Plaintiffs and the ATDS class)

79. Plaintiff fully incorporates by reference paragraphs 1-20, 22-54, 56-78.

80. The foregoing acts and omissions by Defendant and/or Defendant's agent(s) constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

81. As a result of Defendant's violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

82. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief prohibiting such conduct in the future.

## COUNT II: KNOWING AND/OR WILLFUL VIOLATIONS OF TCPA 47 U.S.C. § 227 ET SEQ.
### (on behalf of both Plaintiffs and the ATDS Class)

83. Plaintiff fully incorporates by reference paragraphs 1-20, 22-54, 56-78.

84. The foregoing acts and omissions by Defendant and/or Defendant's agent(s) constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

85. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

86. Plaintiff and the Class are also entitled to and seek declaratory injunctive relief prohibiting such conduct in the future.

## COUNT III: VIOLATIONS OF THE TCPA: DO-NOT-CALL REGISTRANT RIGHTS UNDER 47 U.S.C. § 227(c) ET SEQ.
### (on behalf of Plaintiff Morgan and the Do-Not-Call Class)

87. Plaintiff Morgan incorporates by reference paragraphs 1-20, 22-54, 56-78.

88. Defendants made multiple telephone solicitation text calls to the telephone numbers of Plaintiff Morgan and the members of the Subscriber Rights Privacy Rights Class.

89. Each such call was placed more than 31 days after Plaintiff Morgan and the members of the Do-Not-Call class registered their respective phone numbers with the National Do-Not-Call Registry.

90. Defendant's conduct violated the TCPA, 47 U.S.C. § 227(c)(5) and its implementing regulations 47 C.F.R. 64.1200(c)-(f).

91. As a result of Defendant's illegal conduct, the members of the Do-Not-Call Class have had their privacy rights violated, suffered statutory and actual damages, and, under 47 U.S.C. § 227(c)(5)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

92. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief.

## COUNT IV: KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA: DO-NOT-CALL REGISTRANT RIGHTS UNDER 47 U.S.C. § 227(c) ET SEQ. (on behalf of Plaintiff Morgan and the Do-Not-Call Class)

93. Plaintiff Morgan incorporates by reference paragraphs 1-20, 22-54, 56-78, 88-90.

94. The foregoing acts and omissions by Defendant and/or Defendant's agents constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

95. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Do-Not-Call Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(C).

96. Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief.

## COUNT V: VIOLATIONS OF THE TCPA: SUBSCRIBER PRIVACY RIGHTS UNDER 47 U.S.C. § 227(c) ET SEQ (on behalf of both Plaintiffs and the Subscriber Rights Class)

97. Plaintiffs incorporate by reference 1-20, 22-54, 56-78.

98. The foregoing facts and conduct constitute violations of the TCPA, 47 U.S.C. § 227(c)(5) and its implementing regulations 47 C.F.R. 64.1200(d).

99. As a result of Defendant's illegal conduct, the members of the Subscriber Rights Class have had their privacy rights violated, suffered statutory and actual damages, and, under 47 U.S.C. § 227(c)(5)(B), are each entitled, *inter alia*, to a minimum of $500.00 in damages for each such violation of the TCPA.

100.   Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief.

### COUNT VI: KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA: SUBSCRIBER PRIVACY RIGHTS UNDER 47 U.S.C. § 227(c) ET SEQ (on behalf of both Plaintiffs and the Subscriber Rights Class)

101.   Plaintiffs incorporate by reference paragraphs 1-20, 22-54, 56-78.

102.   The foregoing acts and omissions by Defendant and/or Defendant's agents constitute numerous knowing and/or willful violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227(c)(5) and 47 C.F.R. 64.1200(d).

103.   As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and the Subscriber Rights Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(C).

104.   Plaintiff and the Class are also entitled to and seek declaratory and injunctive relief.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff and the Class members the following relief against Defendant:

<u>Count I: Violations of the TCPA, 47 U.S.C. § 227 Et Seq.</u>

- As a result of Defendant's violations of 47 U.S.C. § 227 demonstrated herein, Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation.

- Pursuant to 47 U.S.C. § 227, injunctive relief prohibiting such conduct in the future.

- Any other relief the Court deems just and proper

<u>Count II: Knowing and/or Willful Violations of the TCPA, 47 U.S.C. § 227 Et Seq.</u>

- As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 demonstrated herein, Plaintiffs seek for themselves and each Class member $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227.

- Pursuant to 47 U.S.C. § 227, injunctive relief prohibiting such conduct in the future

- Any other relief the Court deems just and proper.

## **TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff demands her right to a trial by jury.

**Dated:** September 12, 2018                              Respectfully submitted,

By:   */s/ Ed Normand*
Edmund A. Normand
FBN: 865590
*/s/ Jake Phillips*
Jacob L. Phillips

FBN: 120130
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: ☎407.603.6031
ed@ednormand.com
jacob@ednormand.com
office@ednormand.com
service@ednormand.com

*Attorney for Plaintiff's and Putative Class*